UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
----------------------------------------------------------------------x

LANE CODER PHOTOGRAPHY, LLC        :
        :
        :
      *Plaintiff,*        :      Index No.: 3:21-cv-00861
        :
        :
    -against-        :
        :
        :      **COMPLAINT**
WILLIAM PITT – JULIA B. FEE SOTHEBY'S  :
INTERNATIONAL REALTY, INC., INSIDER, INC.,  :
BOSTON GLOBE MEDIA PARTNERS, LLC,  :
NBCUNIVERSAL MEDIA, LLC, LOS ANGELES  :      <u>**DEMAND FOR JURY TRIAL**</u>
TIMES COMMUNICATIONS, LLC, SEATTLE  :
TIMES COMPANY, TRIBUNE PUBLISHING  :
COMPANY, LLC, TRIBUNE CONTENT AGENCY,  :
LLC, *and* JOHN DOEs 1-100,  :
        :
        :
      *Defendants*.      :
----------------------------------------------------------------------x

      Plaintiff Lane Coder Photography, LLC ("Coder LLC"), by and through its attorneys, brings this action against Defendants William Pitt – Julia B. Fee Sotheby's International Realty, Inc. ("Sotheby's"), Insider, Inc. ("Insider"), Boston Globe Media Partners, LLC ("Boston Globe"), NBCUniversal Media, LLC ("NBC"), Los Angeles Times Communications, LLC ("LA Times"), Seattle Times Company ("Seattle Times"), Tribune Publishing Company, LLC ("TPC"), Tribune Content Agency, LLC ("TCA") and John Does 1-100 (all defendants collectively, "Defendants"), and alleges as follows:

<u>**NATURE OF THE ACTION**</u>

      1.    This is an action for direct copyright infringement, contributory copyright infringement, the distribution of false Copyright Management Information ("CMI"), as that term is defined under 17 U.S.C. § 1202, the alteration, removal, and falsification of CMI, false

designation of origin, false advertising, and unfair competition. Plaintiff Coder LLC brings this action in response to the knowingly unauthorized uses of his original, copyrighted photographs, and other copyright violations, by the Defendants, without his knowledge or consent.

## PARTIES

1.      Plaintiff Coder LLC is a Maine limited liability company that is wholly owned by Nonparty W. Lane Coder, Jr. ("Mr. Coder"), formerly a Connecticut, and now Maine, domiciliary. Coder LLC was formed for the principal purpose of managing the licensing of photographic works created by Mr. Coder, and Coder LLC is the assignee of the relevant copyright and other rights at issue in this case.

2.      On information and belief, Defendant Sotheby's is a Delaware corporation and has its principal place of business in Stamford, Connecticut. Sotheby's is a real estate brokerage company.

3.      Defendant Boston Globe is a Massachusetts corporation, which on information and belief has its principal place of business in Boston, Massachusetts. On information and belief, Boston Globe owns and operates a website called "RealEstate by www.Boston.com and www.Globe.com," accessible at realestate.boston.com.

4.      Defendant Insider is a Delaware corporation, which on information and belief has its principal place of business in New York, New York. On information and belief, Insider owns and operates the publication *Business Insider*, including an edition published in the United States, as well as various purportedly foreign editions, including Business Insider Australia, Business Insider India, Business Insider Sub-Saharan Africa, Business Insider Malaysia, and Business Insider Singapore, but which can all be accessed in the United States. To the extent Insider's corporate structure indicates some of these so-called foreign editions are purportedly published by

foreign business entities, Plaintiff Coder LLC is informed and believes that they are all under common corporate ownership and control by the U.S. entity sued here.

5. Defendant NBC is a Delaware limited liability company, which on information and belief has its principal place of business in New York, New York. On information and belief, NBC owns, operates, and publishes the website cnbc.com

6. Defendant LA Times is a Delaware limited liability company, which on information and belief has its principal place of business in El Segundo, California. LA Times owns and operates the website www.latimes.com.

7. On information and belief, Defendant Seattle Times is a Delaware corporation with its principal place of business in Seattle, Washington. On information and belief, Seattle Times owns and operates www.seattletimes.com.

8. Defendant TPC is a Delaware limited liability company with its principal place of business in Chicago, Illinois, and owns and operates a publication called the *Hartford Courant*, as well as a news wire service called Tribune News Service.

9. Defendant TCA is a Delaware limited liability company with its principal place of business in Chicago, Illinois, and on information and belief is a company operated by TPC. On information and belief, TPC and TCA together own and operate a news wire service called Tribune News Service.

10. The identities of John Does 1-100 are unknown to Coder LLC at this time, but on information and belief they consist of entities who have taken unauthorized licenses to Coder LLC's photographs from one or more of the Defendants in this action.

## JURISDICTION AND VENUE

11.     This action arises under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.* and 15 U.S.C. § 1125 *et seq*.

12.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367, and 15 U.S.C. § 1121.

13.     This Court has personal jurisdiction over Sotheby's because it has its principal place of business in the State of Connecticut.  Coder LLC's claims as to Sotheby's arise from and are related to Sotheby's continuous and systematic contacts with the State of Connecticut.

14.     This Court has personal jurisdiction over Defendants Insider, Boston Globe, NBC, LA Times, Seattle Times, TPC, and TCA pursuant to Conn. Gen. Stat. § 52-59b because each of them (1) committed a tortious act outside the state causing injury to person or property within the state, where each of them (a) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (b) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce, or (2) owns, uses or possesses any real property situated within the state.  Insider, Boston Globe, NBC, LA Times, Seattle Times, TPC, and TCA derive substantial revenue from interstate commerce and expected or should reasonably have expected their tortious acts to have consequences in the State of Connecticut.  Coder LLC's claims as to Insider, Boston Globe, NBC, LA Times, Seattle Times, TPC, and TCA arise from and are related to their continuous and systematic contacts with the State of Connecticut, including their business relationship with Defendant Sotheby's.

15.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND FACTS

### *Coder's Creation of the Copyrighted Photographs*

16.     Nonparty Mr. Coder is an award-winning professional photographer whose work focuses on portraits, architecture, and landscapes.  Mr. Coder's work has been featured internationally in numerous notable publications, including *Vogue*, *The New York Times*, *The New York Times Magazine*, *The New Yorker*, and *The Daily Telegraph*.  Mr. Coder also regularly licenses his works for use in large-scale advertising campaigns and for use on the Internet.

17.     Sotheby's is the largest affiliate of Sotheby's International Realty, providing real estate brokerage services in the Connecticut, Massachusetts, and New York area.  Sotheby's in particular provides real estate broker services to those looking to buy and sell high-value residential real estate.

18.     In the spring of 2019, Sotheby's engaged Mr. Coder's services for the creation of photographs of a house in New Canaan, Connecticut, located at 82 Brookwood Lane, New Canaan, Connecticut 06840, known as "Greenacre" (each, a "Photograph"; collectively, the "Photographs").  Attached hereto as **Exhibit A** are copies of some of the Photographs, in particular, the ones that are the subject of this action.

19.     Mr. Coder registered the Photographs in the U.S. Copyright Office, Reg. No. VA 2-169-321, with an effective registration date of August 27, 2019.  Attached hereto as **Exhibit B** is a copy of the registration certificate for the Photographs.

20.     Sotheby's engagement of Mr. Coder was governed by an oral non-exclusive license agreement between Sotheby's and Mr. Coder, pursuant to which the Photographs were to be used by Sotheby's solely in connection with its own print advertising, website and social media, plus a single one-time use in the Wall Street Journal solely in connection with Sotheby's specific request

to Mr. Coder that it be permitted to place an article in the Wall Street Journal for the purpose of promoting the sale of Greenacre. Sotheby's never requested any other use of the Photographs and none was permitted by Mr. Coder.

21. The terms of the license also required that any use of the Photographs was to be accompanied by an authorship credit to Mr. Coder.

22. On or around April 9, 2021, Mr. Coder assigned all intellectual property and other rights, including copyrights, in the Photographs to Coder LLC, including all causes of action that may have accrued prior to the date of the assignment agreement, including the causes of action asserted in this action. Attached hereto as **Exhibit C** is a copy of that agreement.

23. At no point did Mr. Coder or Plaintiff Coder LLC otherwise transfer any ownership interest in the Photographs' copyright to Sotheby's or to any other third parties at the time of this transaction, and accordingly Coder LLC retains exclusive ownership of the copyright in the Photographs. At no point did Mr. Coder or Coder LLC grant permission to Sotheby's to sublicense third-party uses of the Photographs of any kind except for the limited Wall Street Journal use referenced above.

### *Sotheby's Direct and Contributory Infringement*

24. In the spring of 2019, Mr. Coder began seeing numerous infringing uses of his Photographs on third-party websites and online publications not belonging to or associated with Sotheby's or the Wall Street Journal. The Photographs were instead being used in these publications in stories having to do with the property's celebrity ownership by Paul Simon and Edie Brickell, to entertain their readers by illustrating the extravagance of Greenacre and to enhance the value of the publications' websites to sell advertising and generate other revenue.

25.     Among these publications were those published by Defendants Boston Globe, Insider, NBC, LA Times, Seattle Times, and TPC.  On information and belief, Sotheby's caused these publications to infringe Coder LLC's Photographs by indirectly or directly distributing the Photographs to them for further publication and distribution.

26.     As discussed above, with the exception of the Wall Street Journal, neither Coder nor Coder LLC authorized Sotheby's to distribute the Photographs to any third parties.

### *Boston Globe's Direct Infringement*

27.     On April 24, 2019, Boston Globe, through its publication, *RealEstate*, reproduced and publicly displayed at least 20 copies of the Photographs in an article, titled, "Paul Simon's Connecticut home listed for $13.9 million." Attached hereto as **Exhibit D** is a copy of the article.

28.     Neither Mr. Coder nor Plaintiff Coder LLC authorized Boston Globe to reproduce, publish, display, or otherwise use the Photographs.  Boston Globe failed to seek the requisite license for using the Photographs.

29.     On information and belief, Sotheby's provided Boston Globe with the unauthorized copies of the Photographs.

### *Boston Globe's CMI Violations*

Boston Globe's State of Mind Concerning the Obligation to Credit Mr. Coder

30.     On information and belief, in providing copies of the Photographs to Boston Globe, Sotheby's informed Boston Globe that Mr. Coder was the author and owner of the copyright in the Photographs at that time, and that he should be credited as such.  That is evidenced at least in part by the fact that the Photographs are credited to Mr. Coder, as discussed below.

<u>False "Terms of Service"</u>

31.     When accessing any webpage within Boston Globe's website, including, on information and belief, the webpage containing Boston Globe's infringing article, provided in the footer is a hyperlink to a webpage containing "Terms of Use," which in turn contains a hyperlink to a webpage containing "Terms of Service," which state, *inter alia*, as follows: "All materials published on the Services (including, but not limited to news articles, ***photographs, images***, illustrations, audio clips and video clips, also ***known as the 'Content'***) are protected by copyright, ***and owned or controlled by The Boston Globe or the party credited as the provider of the Content*** . . . . ***You may download or copy the Content*** and other downloadable items displayed on the Services for personal use only, provided that you maintain all copyright and other notices contained therein.  Copying or storing of any Content for other than personal use is expressly prohibited ***without prior written permission from The Boston Globe Rights and Permissions Department, or the copyright holder identified in the copyright notice contained in the Content*** . . . . ***The Content of the Services is owned or licensed to BG***."  (Emphasis added).

32.     The above-referenced "Terms of Service" constitute CMI, in particular pursuant to 17 U.S.C. §§ 1202(c)(2), (c)(3), and (c)(6).

33.     The "Terms of Service" contain numerous falsehoods as discussed below.

34.     The "Terms of Service" represent that "[y]ou may download or copy the Content," but that is false because, *inter alia*, neither Mr. Coder, the exclusive owner of the Photographs' copyright at the time Boston Globe initially infringed, nor Plaintiff Coder LLC, the current owner of the Photographs' copyright, and thus the only parties authorized to grant a license to Boston Globe for use of the Photographs at any given time, did not grant Boston Globe any sublicensing

right (or any other rights) to authorize third-party use of the Photographs for "personal use," or for any other purpose.

35.     The "Terms of Service" represent that permission to use the Photographs for non-personal uses requires "prior written permission from The Boston Globe Rights and Permissions Department, or the copyright holder identified in the copyright notice contained in the Content," but that is false because Mr. Coder was the only party at the time Boston Globe initially infringed authorized to grant a license for use of the Photographs, and Plaintiff Coder LLC is the current owner of such rights, and Boston Globe is not authorized to grant such a license.

36.     The "Terms of Service" represent that "[t]he Content of the Services is owned or licensed to BG," but that is false because, *inter alia*, it applies to all content appearing on Boston Globe's website, including all photographs, and the Photographs are not owned by Boston Globe because at the time Boston Globe infringed, Mr. Coder was the exclusive owner of, and the only party authorized at the time to grant a license to Boston Globe for use of, the Photographs, and Plaintiff Coder LLC is the only party at this time authorized to grant such licenses. Neither Mr. Coder nor Plaintiff Coder LLC granted any such license to Boston Globe nor otherwise provided the Photographs to Boston Globe, and therefore the Photographs are not owned by or licensed to Boston Globe.

False Boston Globe Copyright Notice

37.     When accessing any webpage within Boston Globe's website, including, on information and belief, the webpage containing Boston Globe's infringing article, provided in the footer is a copyright notice, reading, "© 2021 Boston Globe Media Partners, LLC."

38.     The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

39.     The foregoing copyright notice is false, in particular because when it is viewed by an Internet user in the context of the above-referenced Terms of Service, which state that all uses of photographs and images from Boston Globe's website, including the Photographs at issue here, require "prior written permission from The Boston Globe Rights and Permissions Department, or the copyright holder identified in the copyright notice contained in the Content," and because on information and belief the only "copyright notice" conveyed by Boston Globe in connection with Boston Globe's unauthorized copies of the Photographs was Boston Globe's own copyright notice, Boston Globe's copyright notice falsely communicates to the general public that it is the copyright owner of the Photographs.

<u>Summary of Boston Globe's CMI Violations</u>

40.     By its addition of its false copyright notice and the addition of its "Terms of Service," to the CMI conveyed in connection with the Photographs, Boston Globe provided and/or distributed false CMI to any Internet user that accessed its infringing article, intentionally altered the Photographs' CMI, distributed CMI that had been altered, and distributed copies of the Photographs with their CMI having been altered.

***Insider's Direct Infringement with Respect to U.S. and Foreign Editions***

41.     On May 4, 2019, through its U.S. publication *Business Insider*, as well as numerous various purportedly foreign editions, including Business Insider Australia, Business Insider India, Business Insider Sub-Saharan Africa, Business Insider Malaysia, and Business Insider Singapore, Insider published an article, titled, "Paul Simon is selling his Connecticut estate for $13.9 million. Take a look at the 32-acre property, which comes with a private music studio where Simon recorded his last 4 albums." Attached hereto as **Exhibit E** are copies of the various editions of the article.

42.     Neither Mr. Coder nor Coder LLC authorized Insider, including with respect to its so-called foreign editions, to reproduce, publish, display, or otherwise use the Photographs. Insider failed to seek the requisite license for using the Photographs.

43.     On information and belief, Sotheby's provided Insider with the unauthorized copies of the Photographs.

***Alternatively, With Respect to the So-Called Foreign Editions***,
***Insider's Contributory Infringement***

44.     Notwithstanding the above allegations concerning the common control of purportedly foreign editions of *Business Insider* by the U.S. entity sued here, alternatively with respect to the so-called foreign editions, there is nonetheless also a wealth of evidence that Insider caused such so-called foreign editions to infringe Coder LLC's Photographs, including the following facts: (a) each infringing article was published on the very same date, May 4, 2019; (b) indeed, the U.S. and Indian editions published the article at precisely the same time (17:30 IST / 8 AM EST); (c) each article has the very same, verbose title— "Paul Simon is selling his Connecticut estate for $13.9 million.  Take a look at the 32-acre property, which comes with a private music studio where Simon recorded his last 4 albums"; (d) each article is written by the same author, Katie Warren; and (e) each article contains the same set of unlicensed Photographs, presented in precisely the same order as one another, and accompanied by the same text.

45.     Neither Mr. Coder nor Plaintiff Coder LLC authorized Insider to distribute copies of the Photographs to any third parties, and neither Mr. Coder nor Coder LLC authorized any foreign affiliates of Insider to use the Photographs for any purpose.

## Insider's CMI Violations

### Insider's State of Mind Concerning the Obligation to Credit Mr. Coder

46.     On information and belief, in providing copies of the Photographs to Insider, Sotheby's informed Insider that Mr. Coder was the author and owner of the copyright in the Photographs at that time and that he should be credited as such.

### Removal of Mr. Coder's Gutter Credit; Addition of False Gutter Credits

47.     In spite of the obligation to credit Mr. Coder, Insider nonetheless removed Mr. Coder as the party to be credited in connection with the Photographs and altered and falsified the CMI of the Photographs by providing credit attributions to "William Pitt – Julia B. Fee Sotheby's International Realty" and sometimes the "Los Angeles Times" in their articles.

48.     These credit attributions are false because they falsely communicate that the use of these Photographs was authorized and that such authorization was properly granted by Defendant Sotheby's or Defendant LA Times, and also because they falsely communicate to the general public that either Defendant Sotheby's or Defendant LA Times is an author, owner, and/or authorized licensor of the Photographs.

### Insider's False Terms of Service

49.     With respect to the U.S. edition at minimum, when accessing any webpage within Insider's website, including, on information and belief, the webpage containing Insider's infringing article, provided in the footer is a hyperlink to a webpage containing "Terms of Service," which state, *inter alia*, as follows: "The Sites and all of their contents, features, and functionality (including but not limited to all information, software, text, displays, ***images***, video and audio, and the design, selection and arrangement thereof), are owned by Insider Inc., its licensors, or other providers of such material and are protected by United States and international copyright,

trademark, patent, trade secret, and other intellectual property or proprietary rights laws. . . . ***You may access the material on the Sites*** only for your own personal, non-commercial use. . . . With respect to our mobile applications, ***you may download a single copy*** to each of your mobile devices solely for your own personal, non-commercial use, provided you agree to be bound by these Terms of Use."

50.     The above-referenced "Terms of Service" constitute CMI, in particular pursuant to 17 U.S.C.§§ 1202(c)(6).

51.     The "Terms of Service" are false because, *inter alia*, they apply to all content appearing on Insider's website, including all photographs, and neither Mr. Coder nor Coder LLC, which depending on the time have been the only exclusive owner of, and the only party authorized to grant a license to Insider for use of, the Photographs, did not grant Insider with authority to grant any type of use of the Photographs, even for personal, non-commercial uses.

Insider's False Copyright Notice

52.     With respect to the U.S. edition at minimum, when accessing any webpage within Insider's website, including, on information and belief, the webpage containing Insider's infringing article, provided in the footer is a copyright notice, reading, "Copyright © 2021 Insider Inc."

53.     The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

54.     The foregoing copyright notice is false, in particular because when it is viewed by an Internet user in the context of the above-referenced Terms of Service, which state that all images, including the Photographs at issue here, and other site content "are owned by Insider Inc., its licensors, or other providers of such material," the copyright notice falsely suggests that Insider

is the owner of the copyright in the Photographs, especially given that on information and belief no other copyright notice was conveyed by Insider in connection with the Photographs, and therefore an Internet user would be led to believe Insider was claiming ownership in the Photographs' copyrights.

<u>Summary of Insider's CMI Violations</u>

55.     By its addition and publication of the foregoing false credit attributions to Defendants Sotheby's and LA Times, its false copyright notice, and the addition of its "Terms of Service," Insider provided and/or distributed false CMI to any Internet user that accessed its infringing article, intentionally removed and/or altered the Photographs' CMI, distributed CMI that had been altered, and distributed copies of the Photographs with their CMI having been altered.

***NBC's Direct Infringement***

56.     On April 27, 2019, NBC reproduced and publicly displayed at least 18 copies of the Photographs in an article titled "Paul Simon's $13.9 million Connecticut mansion is for sale – take a look inside." Attached hereto as **Exhibit F** is a copy of the article.  NBC also created and displayed numerous derivative works of the Photographs it used, including a video utilizing the Photographs in the form of a video sequence which uses at least 17 copies of the Photographs. The thumbnail image of the video sequence features an image of Paul Simon superimposed upon one of the Photographs.  NBC's copies of the Photographs also contain other aspects of retouching and cropping.

57.     On information and belief, Sotheby's provided Insider with the unauthorized copies of the Photographs and informed Insider that Mr. Coder was the author and owner of the copyright in the Photographs at that time, and that he should be credited as such.

58.     Consistently with that requirement, NBC credited Mr. Coder in connection with its unauthorized copies of the Photographs.

59.     Neither Mr. Coder nor Coder LLC authorized NBC to reproduce, publish, display, create a derivative work of, or otherwise use the Photographs.  NBC failed to seek the requisite license for using the Photographs.

### LA Times' Direct Infringement

60.     On April 30, 2019, LA Times reproduced and publicly displayed at least 13 copies of the Photographs in an article, titled, "Paul Simon seeks $13.9 million for Connecticut mansion and recording studio." Attached hereto as **Exhibit G** is a copy of the article.

61.     Neither Mr. Coder nor Coder LLC authorized LA Times to reproduce, publish, display or otherwise use the Photographs.  LA Times failed to seek the requisite license for using the Photographs.

### LA Times' CMI Violations

LA Times' State of Mind Concerning the Obligation to Credit Mr. Coder

62.     On information and belief, Sotheby's provided LA Times with the unauthorized copies of the Photographs and informed LA Times that Mr. Coder was the author and owner of the copyright in the Photographs at that time, and that he should be credited as such.  That is evidenced at least in part by the fact that the Photographs are credited to Mr. Coder, as discussed below.

LA Times' False Terms of Service

63.     When accessing any webpage within LA Times' website, including, on information and belief, the webpage containing LA Times' infringing article, provided in the footer is a hyperlink to a webpage containing "Terms of Service," which state, *inter alia*, as follows: "All

information, content, services and software displayed on, transmitted through, or used in connection with the Site . . . , including, for example, . . . ***photographs, images*** . . . (collectively, the 'Content'), as well as its selection and arrangement, is owned by Los Angeles Times and/or its licensors and suppliers. ***You may use the Content*** online only, and solely for your personal, non-commercial use, and ***you may download or print*** a single copy of any portion of the Content solely for your personal, non-commercial use, provided you do not remove any trademark, copyright or other notice from such Content.  . . . ***No other use is permitted without prior written permission of Los Angeles Times***."  (Emphasis added).

64.     The above-referenced "Terms of Service" constitute CMI, in particular pursuant to 17 U.S.C.§§ 1202(c)(2), (c)(3), and (c)(6).

65.     The "Terms of Service" contain numerous falsehoods as discussed below.

66.     The "Terms of Service" represent that all "photographs" and "images" are "owned by Los Angeles Times and/or its licensors and suppliers," but that is false, *inter alia*, because Mr. Coder and Coder LLC, not LA Times, depending on the time have been the sole and exclusive owners of the copyright in the Photographs, and neither is a licensor or supplier of the Photographs with respect to LA Times.

67.     The "Terms of Service" represent that "[y]ou may use the Content," but that is false because, *inter alia*, neither Mr. Coder nor Plaintiff Coder LLC, which depending on the time have been the only exclusive owners of, and the only parties authorized to grant a license to LA Times for use of the Photographs, granted LA Times any sublicensing right (or any other rights) to authorize third-party use of the Photographs for "personal, non-commercial use," or for any other purpose.

68.     The "Terms of Service" represent that permission to use the Photographs for non-personal uses requires "prior written of LA Times," but that is false because Plaintiff Coder LLC, and previously Mr. Coder, have been the only parties authorized to grant a license for use of the Photographs, and any written permission as to use of the Photographs would be invalid.

<u>LA Times' False Copyright Notice</u>

69.     When accessing any webpage within LA Times' website, including, on information and belief, the webpage containing LA Times' infringing article, provided in the footer is a copyright notice, reading, "Copyright © 2021, Los Angeles Times"

70.     The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

71.     The foregoing copyright notice is false, because LA Times does not own the copyright in the Photographs.

72.     The foregoing copyright notice is false, because, when it is viewed by an Internet user in the context of the above-referenced Terms of Service, which state that all uses of photographs and images from LA Times' website, including the Photographs at issue here, require "prior written permission of Los Angeles Times," and because on information and belief the only copyright notice conveyed by LA Times in connection with its unauthorized copies of the Photographs was LA Times' own copyright notice, LA Times' copyright notice falsely communicates to the general public that it is the copyright owner of the Photographs.

<u>Summary of LA Times' CMI Violations</u>

73.     By its addition and publication of its false copyright notice and the addition of its "Terms of Service," LA Times provided and/or distributed false CMI to any Internet user that

accessed its infringing article, intentionally altered the Photographs' CMI, distributed CMI that had been altered, and distributed copies of the Photographs with their CMI having been altered.

### *LA Times' Contributory Infringement*

74.     In addition to its own use, on information and belief, LA Times further distributed the Photographs by providing a copy of its article to TPC and/or TCA for further distribution through their news wire service, Tribune News Service, for use by further media publications.

75.     Neither Mr. Coder nor Coder LLC authorized LA Times to distribute copies of the Photographs.

### *TPC's Direct Infringement*

76.     On January 20, 2020, TPC, through its publication, the *Hartford Courant*, reproduced, distributed, and displayed at least one copy of a Photograph in an article, titled, "Look at the 10 priciest ZIP codes in Connecticut, according to a new report."  Attached hereto as **Exhibit H** is a copy of the article.

77.     On information and belief, Sotheby's provided TPC with the unauthorized copies of the Photographs for use in the *Hartford Courant* and informed TPC that Mr. Coder was the author and owner of the copyright in the Photographs at that time, and that he should be credited as such.

78.     Consistently with that requirement, TPC credited Mr. Coder in connection with its unauthorized copy of one of the Photographs in the *Hartford Courant*.

79.     Neither Mr. Coder nor Coder LLC authorized TPC to reproduce, publish, display or otherwise use the Photographs. TPC failed to seek the requisite license for using the Photographs.

### *TPC and TCA's Contributory Infringement*

80.　On information and belief TPC and TCA, separately through their news wire service, Tribune News Service, reproduced and distributed at least three copies of the Photographs to Seattle Times and likely other publishers as well, and did so with the false attribution of authorship and/or ownership to Marcott Studios, despite TPC and TCA's knowledge that Mr. Coder was the author and owner of the Photographs' copyright at that time, as evidenced by the *Hartford Courant* use referenced above.

81.　Neither Mr. Coder nor Coder LLC authorized TPC or TCA to distribute copies of the Photographs.

### *Seattle Times' Direct Infringement*

82.　On May 16, 2019, Seattle Times reproduced and displayed at least three of the Photographs in an article, titled, "It's no Graceland, but Paul Simon's mansion is for sale." Attached hereto as **Exhibit I** is a copy of the article.

83.　Neither Mr. Coder nor Coder LLC authorized Seattle Times to reproduce, publish, display, or otherwise use the Photographs.　Seattle Times failed to seek the requisite license for using the Photographs.

### *Seattle Times' Falsification, Removal, and Alteration of the Photographs' CMI*

#### Seattle Times' State of Mind Concerning the Obligation to Credit Mr. Coder

84.　On information and belief, TPC and/or TCA, through the Tribune News Service, provided Seattle Times with the unauthorized copies of the Photographs and informed Seattle Times that Mr. Coder was the author and owner of the copyright in the Photographs at that time, and that he should be credited as such.

## Removal of Mr. Coder's Gutter Credit; Addition of False Gutter Credits

85.     In spite of the obligation to credit Mr. Coder, Seattle Times removed Mr. Coder as the party to be credited and instead falsely attributed copyright ownership of these Photographs to "Marcott Studios via TNS."

86.     The foregoing credits constitute CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

87.     These credit attributions are false because they falsely communicate that the use of these Photographs was authorized, that such authorization was provided properly by Marcott Studios and/or TPC and/or TCA, and also because they falsely communicate to the general public that Marcott Studios and/or TPC and/or TCA is an author, owner, and/or authorized licensor of the Photographs.

## Seattle Times' False Terms of Service

88.     When accessing any webpage within Seattle Times' website, including, on information and belief, the webpage containing Seattle Times' infringing article, provided in the footer is a hyperlink to a webpage containing "Terms of Service," which state, *inter alia*, as follows: "***All of the content featured or displayed on the Sites***, including without limitation text, graphics, ***photographs, images***, moving images, sound, and illustrations ('Content'), ***is owned by The Seattle Times, its licensors, vendors, agents and/or its Content providers***. . . . All elements of the Sites, including without limitation the general design and the Content, are protected by trade dress, copyright, moral rights, trademark and other laws relating to intellectual property rights. . . . The Sites, its Content and all related rights shall remain the ***exclusive property of The Seattle Times or its licensors unless otherwise expressly agreed***."  (Emphasis added).

89.     The above-referenced "Terms of Service" constitute CMI, in particular pursuant to 17 U.S.C. §§ 1202(c)(2), (c)(3), and (c)(6).

90.     The "Terms of Service" contain numerous falsehoods as discussed below.

91.     The "Terms of Service" represent that "[a]ll of the content featured or displayed" on Seattle Times' website, including "photographs" and "images," is "owned by The Seattle Times, its licensors, vendors, agents and/or its Content providers," and elsewhere states that all such "Content" and "all related rights shall remain the exclusive property of The Seattle Times or its licensors unless otherwise expressly agreed."  That is false, because, *inter alia*, these terms apply to all content appearing on Seattle Times' website, including all photographs, and at minimum the Photographs are not owned by Seattle Times, and further because neither Mr. Coder nor Coder LLC, which depending on the time have been the only exclusive owners of, and the only parties authorized to grant a license to Seattle Times for use of, the Photographs, did not grant any such license to Seattle Times or otherwise provide the Photographs or any other content to Seattle Times, and therefore the Photographs are also not owned by any of Seattle Times or its "licensors, vendors, agents and/or its Content providers."

Seattle Times' False Copyright Notice

92.     When accessing any webpage within Seattle Times' website, including, on information and belief, the webpage containing Seattle Times' infringing article, provided in the footer is a copyright notice, reading, "Copyright © 2021 The Seattle Times"

93.     The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C. §§ 1202 (c)(1), (c)(2) and (c)(3).

94.     The foregoing copyright notice is false, in particular because when it is viewed by an Internet user in the context of the above-referenced Terms of Service, which state that all uses

of photographs and images from Seattle Times' website, including the Photographs at issue here, are "owned by The Seattle Times, its licensors, vendors, agents and/or its Content providers," and because on information and belief the only copyright notice conveyed by Seattle Times in connection with its unauthorized copies of the Photographs was Seattle Times' own copyright notice, Seattle Times' copyright notice falsely communicates to the general public that it is the copyright owner of the Photographs.

## FIRST CLAIM FOR RELIEF

### Direct Copyright Infringement, 17 U.S.C. § 101, *et seq.*
### All Defendants

95.     Plaintiff Coder LLC incorporates by reference and realleges the allegations contained in Paragraphs 1-94, inclusive, as though fully set forth herein.

96.     The Photographs are original copyrightable works.

97.     Mr. Coder is the sole author of the Photographs.

98.     Mr. Coder complied in all respects with 17 U.S.C. 101, *et seq.*, and secured the exclusive rights in and ownership of the Photographs and filed his registration of copyright in the Photographs with the U.S. Copyright Office in accordance with its rules and regulations. Mr. Coder received Registration No. VA 2-169-321, with an effective registration date of August 27, 2019, a copy of which is attached hereto as Exhibit B.

99.     Coder LLC is the owner of the Photographs' copyright, including the aforementioned copyright registration certificate, by assignment.

100.     By the actions alleged above, all Defendants have infringed upon Coder LLC's copyright in the Photographs by reproduction, public display, and/or distribution of the same, without authorization.   In particular, NBC also infringed Coder LLC's copyright in the Photographs by the creation of derivative works incorporating the Photographs.

101.     As a direct and proximate result of the copyright infringement detailed herein, Coder LLC has been and continues to be damaged in an amount unknown at the present and to be determined at trial.

102.     As a direct and proximate result of the copyright infringement detailed herein, all Defendants have gained and/or will gain substantial profits as a result of their infringement in an amount presently unknown and to be determined at trial.

103.     Coder LLC is entitled to recover his actual damages and any additional damages from all Defendant's profits not calculated in the computation of his actual damages in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

104.     To the extent such infringement persists, Coder LLC has no adequate remedy at law to protect his rights in the Photographs and to prevent all Defendants from continuing to infringe the Photographs, thereby causing continued injury to it, and will continue to suffer irreparable injury from all the Defendants conduct as alleged.

105.     As a direct and proximate result of the copyright infringement detailed herein, Coder LLC is entitled to permanent injunctive relief enjoining and restraining all Defendants from infringing his copyright, pursuant to 17 U.S.C. § 502.

106.     To the extent the infringements described herein postdate the effective date of Coder LLC's Photographs' copyright registration, including TPC's infringement via the *Hartford Courant*, Coder LLC is also entitled, in the alternative to actual damages and Defendants' profits, and at his election, to seek statutory damages pursuant to 17 U.S.C. § 504(c) and his costs, including his attorneys' fees, pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

**Contributory Copyright Infringement, 17 U.S.C. § 101, *et seq.***
**Defendants Sotheby's, Insider, LA Times, TPC, and TCA**

107. Coder LLC incorporates by reference and realleges Paragraphs 1-106, inclusive, as though fully set forth herein.

108. By the actions alleged above, all Defendants have directly infringed upon Coder LLC's copyright in the Photographs by reproduction, public display, and/or distribution of the same, and in the case of NBC, the creation of a derivative work of the same, without Coder LLC's authorization.

109. In particular, on information and belief, Sotheby's directly distributed copies of the Photographs to Boston Globe, Insider, NBC, LA Times, and TPC (for use in the *Hartford Courant*), for further distribution and use of the Photographs by these publications.

110. By its actions, there is no question Sotheby's had knowledge of the use of the Photographs by Boston Globe, Insider, NBC, LA Times, and TPC, and induced, caused, and/or materially contributed to their infringing uses. By providing these publications with access to, and copies of, the Photographs, Sotheby's provided them with the tools and support for their direct infringements of Coder LLC's copyright.

111. As such, Sotheby's is contributorily liable for the direct copyright infringements committed by Boston Globe, Insider, NBC, LA Times, and TPC (with respect to its use of the Photographs in the *Hartford Courant*).

112. On information and belief, LA Times directly distributed copies of the Photographs to TPC and/or TCA, for further distribution of the Photographs by TPC and/or TCA via their news wire service, the Tribune News Service, for use of the Photographs by any other media publications subscribing to the wire service.

113. By its actions, there is no question LA Times had knowledge of the use of the Photographs by TPC and TCA and induced, caused, and/or materially contributed to their infringing use. By providing TPC and TCA with access to, and copies of, the Photographs, Sotheby's provided them with the tools and support for their direct infringements of Coder LLC's copyright.

114. As such, LA Times is contributorily liable for the direct copyright infringement committed by TPC and TCA (with respect to their use of the Photographs via the Tribune News Service).

115. On information and belief, TPC and TCA in turn further distributed copies of the Photographs via its news wire service to numerous other media publications, including Seattle Times, for Seattle Times to publish and further distribute.

116. By its actions, there is no question TPC and TCA had knowledge of the use of the Photographs by Seattle Times and induced, caused, and/or materially contributed to its infringing use. By providing Seattle Times publications with access to, and copies of, the Photographs, TPC provided it with the tools and support for its direct infringements of Coder LLC's copyright.

117. As such, LA Times, TPC, and TCA are contributorily liable for the direct copyright infringement committed by Seattle Times.

118. On information and belief, in particular as demonstrated by the allegations in Paragraph 44 above, Insider distributed copies of the Photographs to various of its purportedly foreign affiliates, for further use and distribution of the Photographs by so-called foreign editions of the publication *Business Insider*.

119. By its actions, there is no question Insider had knowledge of the use of the Photographs by its so-called foreign affiliates and induced, caused, and/or materially contributed

to their infringing uses. By providing these purportedly foreign affiliates with access to, and copies of, the Photographs, Insider provided them with the tools and support for its direct infringements of Coder LLC's copyright.

120.    As such, as an alternative to a finding that Insider may be held liable as a direct infringer for the so-called foreign edition infringements under the theory of common corporate control, Insider is nonetheless liable for these infringements as a contributory infringer.

121.    As a direct and proximate result of the copyright infringement detailed herein, Coder LLC has been and continues to be damaged in an amount unknown at present and to be determined at trial.

122.    As a direct and proximate result of the copyright infringement detailed herein, the relevant Defendants have gained and/or will gain substantial profits as a result of their infringement in an amount presently unknown and to be determined at trial.

123.    Coder LLC is entitled to recover his actual damages and any additional damages from all of the relevant Defendant's profits not calculated in the computation of his actual damages in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

124.    To the extent such infringement persists, Coder LLC has no adequate remedy at law to protect his rights in the Photographs and to prevent these Defendants from continuing to infringe the Photographs, thereby causing continued injury to, and will continue to suffer irreparable injury from the conduct as alleged.

125.    As a direct and proximate result of the copyright infringement detailed herein, Coder LLC is entitled to permanent injunctive relief enjoining and restraining these Defendants from infringing his copyright, pursuant to 17 U.S.C. § 502.

126.    To the extent the infringements described herein postdate the effective date of

Coder LLC's Photographs' copyright registration, including TPC's infringement via the *Hartford*

*Courant*, Coder LLC is also entitled, in the alternative to actual damages and Defendants' profits,

and at his election, to seek statutory damages pursuant to 17 U.S.C. § 504(c) and his costs,

including his attorneys' fees, pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF

**False Copyright Management Information**
**Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)**
**Defendants Boston Globe, Insider, LA Times, and Seattle Times**

127.    Plaintiff Coder LLC incorporates by reference and realleges the allegations

contained in Paragraphs 1-126, inclusive, as though fully set forth herein.

128.    On information and belief, and as alleged in detail above, Sotheby's provided

unauthorized copies of the Photographs to Boston Globe, Insider, LA Times, and TPC and/or TCA,

and in doing so informed the foregoing parties that Mr. Coder was the author and owner of the

copyright in the Photographs at that time, and that he should be credited as such.

129.    On information and belief, and as alleged in detail above, TPC and/or TCA in turn

provided unauthorized copies of the Photographs to Seattle Times, and in doing so informed the

Seattle Times that Mr. Coder was the author and owner of the copyright in the Photographs at that

time, and that he should be credited as such.

130.    Nonetheless, these Defendants made numerous misrepresentations about the

Photographs' CMI, as alleged in detail above.

131.    In the case of Boston Globe, and as alleged in detail in Paragraphs 30-40 above,

Boston Globe committed at least two separate acts of CMI falsification, relating to the addition of

a false copyright notice attributing ownership of all site content to Defendant Boston Globe and the addition of false Terms of Service.

132.    In the case of Insider, and as alleged in detail in Paragraphs 46-55 above,  Insider committed at least three separate acts of CMI falsification, relating to false gutter credits to "William Pitt – Julia B. Fee Sotheby's International Realty" and "Los Angeles Times," the addition of a false copyright notice attributing ownership of all site content to Defendant Boston Globe, and the addition of false Terms of Service.

133.    In the case of LA Times, and as alleged in detail in Paragraphs 62-73 above, LA Times committed at least two separate acts of CMI falsification, relating to the addition of a false copyright notice attributing ownership of all site content to Defendant LA Times and the addition of false Terms of Service.

134.    In the case of Seattle Times, and as alleged in detail in Paragraphs 84-94 above, Seattle Times committed at least three separate acts of CMI falsification, relating to false gutter credits to "Marcott Studios via TNS," the addition of a false copyright notice attributing ownership of all site content to Defendant Seattle Times, and the addition of false Terms of Service.

135.    These Defendants committed these acts despite knowing, via information communicated by either Sotheby's and/or TCP and/or TCA, that Mr. Coder was at that time the proper party to be credited in connection with the Photographs (with respect to the false gutter credits), that it is not the copyright owner in at least some site content (with respect to the false copyright notices), and that any Terms of Service conveyed in connection with the Photographs would contain falsehoods given that the terms of use of the Photographs are solely controlled by Coder LLC as copyright owner, or by Mr. Coder at the relevant time (with respect to the false Terms of Service).

136. On information and belief, Defendants Boston Globe, Insider, LA Times, and Seattle Times committed the foregoing acts with the intent to induce, enable, facilitate, or conceal infringement, if not in connection with their own infringements, then at least in connection with further third party infringements.

137. Based on the foregoing, Defendants Boston Globe, Insider, LA Times, and Seattle Times are in violation of 17 U.S.C. § 1202(a)(1) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

138. Based on the foregoing, Defendants Boston Globe, Insider, LA Times, and Seattle Times are in violation of 17 U.S.C. § 1202(a)(2) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

139. Plaintiff Coder LLC has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

140. Defendants Boston Globe, Insider, LA Times, and Seattle Times have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

141. Plaintiff Coder LLC is entitled to recover from Defendants Boston Globe, Insider, LA Times, and Seattle Times its actual damages and any additional of their profits not taken into account in computing its actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

142. In the alternative, and at its election, Plaintiff Coder LLC is entitled to recover from Defendants Boston Globe, Insider, LA Times, and Seattle Times, for each and every violation of 17 U.S.C. §§ 1202(a)(1) and (a)(2), the full extent of which is unknown to Plaintiff Coder LLC at

present and which will be proven at trial, but in any event includes at minimum the specific violations referenced above, statutory damages of up to $25,000, but not less than $2,500, per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

143.     To the extent that the acts complained of herein persist, Plaintiff Coder LLC is entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(a), pursuant to 17 U.S.C. § 1203(b)(1).

144.     Plaintiff Coder LLC is entitled to recover its costs from Defendants Boston Globe, Insider, LA Times, and Seattle Times, pursuant to 17 U.S.C. § 1203(b)(4).

145.     Plaintiff Coder LLC is further entitled to recover its attorneys' fees from Defendants Boston Globe, Insider, LA Times, and Seattle Times, pursuant to 17 U.S.C. § 1203(b)(5).

## FOURTH CLAIM FOR RELIEF

### Removal and/or Alteration of Copyright Management Information
### Digital Millennium Copyright Act, 17 U.S.C. § 1202(b)
### Defendants Boston Globe, LA Times, and Seattle Times

146.     Coder LLC incorporates by reference and realleges the allegations contained in Paragraphs 1-145, inclusive, as though fully set forth herein.

147.     Defendants Boston Globe, LA Times, and Seattle Times knew or should have known that Mr. Coder was the author and owner of the Photographs at the time they infringed, in particular because on information and belief Sotheby's informed them as such, either directly (in the case of Boston Globe, TPC and LA Times) or indirectly (in the case of Seattle Times, via TPC and/or TCA).

148.     Despite having this knowledge, Defendants Boston Globe, LA Times, and Seattle Times intentionally removed and/or altered CMI in connection with the Photographs without the authority of Mr. Coder or Coder LLC, as discussed in detail above and summarized below.

149.     In the case of Boston Globe, and as alleged in detail in Paragraphs 30-40 above, Boston Globe committed at least two separate acts of CMI alteration, relating to the addition of a false copyright notice attributing ownership of all site content to Defendant Boston Globe, and the addition of false Terms of Service, with respect to each Photograph used by Boston Globe.

150.     In the case of Insider, and as alleged in detail in Paragraphs 46-56 above,  Insider committed at least three separate acts of CMI alteration and/or removal, relating to the replacement of proper gutter credits to Mr. Coder with false gutter credits to "William Pitt – Julia B. Fee Sotheby's International Realty" and "Los Angeles Times," the addition of a false copyright notice attributing ownership of all site content to Defendant Boston Globe, and the addition of false Terms of Service.

151.     In the case of LA Times, and as alleged in detail in Paragraphs 62-73 above, LA Times committed at least two separate acts of CMI alteration and/or removal, relating to the addition of a false copyright notice attributing ownership of all site content to Defendant LA Times and the addition of false Terms of Service.

152.     In the case of Seattle Times, and as alleged in detail in Paragraphs 84-94 above, Seattle Times committed at least three separate acts of CMI alteration and/or removal, relating to the replacement of proper gutter credits to Mr. Coder with false gutter credits to "Marcott Studios via TNS," the addition of a false copyright notice attributing ownership of all site content to Defendant Seattle Times, and the addition of false Terms of Service.

153. In particular, all instances of the replacement of proper gutter credits to Mr. Coder with false gutter credits constitute acts of both CMI alteration *and* removal under Section 1202(b).

154. All instances of the addition of false copyright notices and false Terms of Service also constitute acts of intentional CMI alteration under Section 1202(b).

155. By their acts Defendants Boston Globe, LA Times, and Seattle Times each separately committed between two to three violations, with respect to each Photograph they used having removed and/or altered CMI, constituting the intentional removal and/or alteration of CMI.

156. By their acts Defendants Boston Globe, LA Times, and Seattle Times each separately committed between two to three violations, with respect to each Photograph they used having removed and/or altered CMI, constituting the distribution of CMI knowing that CMI has been removed and/or altered without authority of the copyright owner or the law.[1]

157. By their acts Defendants Boston Globe, LA Times, and Seattle Times each separately committed between two to three violations, with respect to each Photograph they used having removed and/or altered CMI, constituting the distribution of copies of the Photographs knowing that CMI has been removed and/or altered without authority of the copyright owner or the law.

158. Given they knew that their acts constituted intentional removal and/or alteration of CMI, and that such removal and/or alteration would result in false information being communicated about the copyright status of the Photographs, these Defendants knew, or had

---

[1] While Section 1202(b) contains three subsections, Section 1202(b) essentially creates six causes of action, as each subsection provides a cause of action for "removal" of CMI, as well as for separate causes of action for "alteration" of CMI. Coder's Section 1202(b) claims are intended to assert claims under both theories, under each of the three subsections, to the extent that it is alleged that a particular Defendant committed an act that constitutes both alteration and removal.

reasonable grounds to know, that their actions would induce, enable, facilitate, or conceal copyright infringement with respect to the Photographs, including their own infringements.

159. Plaintiff Coder LLC has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

160. Defendants Boston Globe, LA Times, and Seattle Times have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

161. Plaintiff Coder LLC is entitled to recover from Defendants Boston Globe, LA Times, and Seattle Times its actual damages and any additional of their profits not taken into account in computing its actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

162. In the alternative, and at its election, Plaintiff Coder LLC is entitled to recover from the relevant Defendants, for each and every violation of 17 U.S.C. § 1202(b), the extent of which is unknown at present and which will be proven at trial, statutory damages of up to $25,000 per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

163. To the extent that the acts complained of herein persist, Plaintiff Coder LLC is entitled to temporary and permanent injunctive relief to prevent or restrain further violations of 17 U.S.C. § 1202(b), pursuant to 17 U.S.C. § 1203(b)(1).

164. Plaintiff Coder LLC is entitled to recover its costs from Defendants Boston Globe, LA Times, and Seattle Times, pursuant to 17 U.S.C. § 1203(b)(4).

165. Plaintiff Coder LLC is further entitled to recover its attorneys' fees from Defendants Boston Globe, LA Times, and Seattle Times, pursuant to 17 U.S.C. § 1203(b)(5).

# FIFTH CLAIM FOR RELIEF

**False Designation of Origin, The Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**
**Defendant Sotheby's**

166.     Coder LLC incorporates by reference and realleges the allegations contained in Paragraphs 1-165, inclusive, as if set forth herein.

167.     Mr. Coder is the author of the Photographs, and all rights in the Photographs are owned exclusively by Coder LLC, with the exception of authorized license agreements referenced above.

168.     Coder LLC is a licensor of photographs, including the Photographs at issue here, to be used by third parties, including media publications, on the Internet and in print.

169.     Defendant Sotheby's knew that Mr. Coder was the author of the Photographs and that at the time of its transaction with Mr. Coder that he was the owner of the registered copyrights in the Photographs at that time, and therefore that at that time Mr. Coder was the exclusive owner and licensor of the Photographs.

170.     While Sotheby's may not have necessarily credited itself as the *owner* of the copyright in the Photographs, even though it knew of the copyright status of the Photographs and that Coder is the exclusive licensor of the same, Defendant Sotheby's offered copies of the Photographs for licensing, thereby competing directly with Coder LLC with respect to the licensing of the Photographs.

171.     By falsely holding itself out as a licensor of the Photographs, Sotheby's has falsely represented to the public the source of the Photographs by attributing to itself the right to administer the licensing of the Photographs.

172. The actions complained of herein are likely to cause confusion or mistake, or to deceive the public as to the affiliation, connection or association of Sotheby's with Coder LLC and the Photographs.

173. The actions complained of herein are further likely to cause confusion or mistake, or to deceive the public as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

174. Sotheby's inserted the Photographs into the stream of commerce by distributing and purportedly licensing the Photographs to numerous publications, for the purpose of commercial gain.

175. The conduct of Sotheby's was willful and deliberate.

176. Coder LLC has suffered monetary damages because Coder LLC sells and licenses the Photographs for the exact type of use employed by the Defendant publications, and by its acts Sotheby's usurped Coder LLC's licensing market.

177. As a direct and proximate result of the misleading and deceptive conduct of Sotheby's, Coder LLC has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

178. As a direct and proximate result of the misleading and deceptive conduct of Sotheby's, Sotheby's has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

179. The conduct complained of herein constitutes an exceptional case.

180. Coder LLC is entitled to recover from Sotheby's its actual damages, the profits gained by Sotheby's, and Coder LLC's costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

## SIXTH CLAIM FOR RELIEF

### False Advertising, The Lanham Act, 15 U.S.C. § 1125(a)(1)(B)
### Defendant Sotheby's

181.    Coder LLC incorporates by reference and realleges the allegations contained in Paragraphs 1 through 180, inclusive, as though fully set forth herein.

182.    Mr. Coder is the author of the Photographs, and by virtue of assignment all rights in the Photographs are owned exclusively by Coder LLC, with the exception of authorized license agreements referenced above.

183.    Coder LLC is a holding company for Mr. Coder's photographic works, and Mr. Coder is a prolific and well-known professional photographer known for producing high quality images.

184.    Coder LLC is a licensor of photographs, including the Photographs at issue here, to be used by third parties, including media publications, on the Internet and in print, like the Defendants in this case.

185.    Defendant Sotheby's knew that at the time of its transaction with Mr. Coder that he was the author of the Photographs and that at that time Mr. Coder as the owner of the registered copyrights in the Photographs, and therefore that at that time Mr. Coder was the exclusive licensor of the Photographs.

186.    Defendant Sotheby's offered copies of the Photographs for licensing, thereby competing directly with Coder LLC with respect to the licensing of the Photographs.

187.    In doing so, Sotheby's has therefore misrepresented to the Defendants to whom it distributed the Photographs, and presumably to other third parties according to facts not yet known to Coder LLC and to be revealed in discovery, the nature, quality, and characteristics of the Photographs in connection with the commercial advertising and promotion of the Photographs for

license to the public. That is particularly so because while Mr. Coder has spent his career building goodwill in the photographic licensing marketplace as the licensor of high quality and sought after visual artworks, Sotheby's has not; Sotheby's is a real estate company. As such, by virtue of misrepresenting the source of the Photographs, Sotheby's has not only created confusion in the marketplace as to the authorized licensor of the Photographs, Sotheby's has also misrepresented the nature, quality, and characteristics of the Photographs by attributing the source of the Photographs to a source (*i.e.*, Sotheby's) that is not known in the marketplace as a source of high quality visual artworks.

188.   Defendants have inserted the Photographs into the stream of commerce by distributing and purportedly licensing the Photographs to the public for commercial gain.

189.   The conduct of Sotheby's was willful and deliberate.

190.   Coder LLC has suffered monetary damages because it licenses the Photographs for the precise type of use employed by the Defendants, and by its acts Sotheby's usurped that market.

191.   As a direct and proximate result of the misleading and deceptive conduct of Sotheby's, Coder LLC has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

192.   As a direct and proximate result of the misleading and deceptive conduct of Sotheby's, Sotheby's has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

193.   The conduct complained of herein constitutes an exceptional case.

194.   Coder LLC is entitled to recover from Sotheby's its actual damages, the profits gained by Sotheby's, and Coder LLC's costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

## SEVENTH CLAIM FOR RELIEF

**Unfair Competition
Connecticut Common Law
Defendants Sotheby's**

195.    Coder LLC incorporates by reference and realleges the allegations contained in Paragraphs 1-194, inclusive, as though fully set forth herein

196.    Mr. Coder is the author of the Photographs, and all rights in the Photographs are owned exclusively by Coder LLC.

197.    Mr. Coder is a prolific and well-known professional photographer known for producing high quality images.

198.    Coder LLC is a licensor of Mr. Coder's photographs, including the Photographs at issue here, to be used by third parties, including media publications, on the Internet and in print, like the Defendants in this case.

199.    Defendant Sotheby's knew that Mr. Coder was the author of the Photographs at the time of its transaction with him and that Mr. Coder as the owner of the registered copyrights in the Photographs at that time, and therefore that Mr. Coder was the exclusive licensor of the Photographs at that time.

200.    While Sotheby's may not have necessarily credited itself as the *owner* of the copyright in the Photographs, Sotheby's, even though it knew of the copyright status of the Photographs and that Mr. Coder at the time was the exclusive licensor of the same, Defendant Sotheby's offered copies of the Photographs for licensing, thereby competing directly with Coder LLC with respect to the licensing of the Photographs.

201.    By falsely holding itself out as the licensor of the Photographs, Sotheby's has falsely represented to the public the source of the Photographs by attributing to itself the right to administer the licensing of the Photographs.

202.    In doing so, Sotheby's has therefore misrepresented to the Defendants to whom it distributed the Photographs, and presumably to other third parties according to facts not yet known to Coder LLC and to be revealed in discovery, the nature, quality, and characteristics of the Photographs in connection with the commercial advertising and promotion of the Photographs for license to the public.  That is particularly so because while Mr. Coder has spent his career building goodwill in the photographic licensing marketplace as the licensor of high quality and sought after visual artworks, Sotheby's has not; Sotheby's is a real estate company.  As such, by virtue of misrepresenting the source of the Photographs, Sotheby's has not only created confusion in the marketplace as to the authorized licensor of the Photographs, Sotheby's has also misrepresented the nature, quality, and characteristics of the Photographs by attributing the source of the Photographs to a source (*i.e.*, Sotheby's) that is not known in the marketplace as a source of high quality visual artworks.

203.    The actions complained of herein are likely to cause confusion or mistake, or to deceive the public as to the affiliation, connection or association of Sotheby's with Coder LLC and the Photographs.

204.    The actions complained of herein are further likely to cause confusion or mistake, or to deceive the public as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

205.    Sotheby's inserted the Photographs into the stream of commerce by distributing and purportedly licensing the Photographs to numerous publications, for the purpose of commercial gain.

206.    The conduct of Sotheby's was willful and deliberate.

207.    Coder LLC has suffered monetary damages because Coder LLC sells and licenses the Photographs for the exact type of use employed by the Defendant publications, and by its acts Sotheby's usurped Coder LLC's licensing market.

208.    As a direct and proximate result of the misleading and deceptive conduct of Sotheby's, Coder LLC has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

209.    As a direct and proximate result of the misleading and deceptive conduct of Sotheby's, Sotheby's has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

210.    Coder LLC is entitled to recover from Defendants its actual damages, the profits gained by Defendants, and Coder LLC's costs of this action, including attorneys' fees, pursuant to Connecticut common law.

## EIGHTH CLAIM FOR RELIEF

**Unfair Competition**
**Connecticut Unfair Trade Practices Act (CUTPA)**
**CT Gen. Stat. § 42-110b**
**Defendant Sotheby's**

211.     Coder LLC incorporates by reference and realleges the allegations contained in Paragraphs 1 through 210, inclusive, as though fully set forth herein.

212.     Mr. Coder is the author of the Photographs, and all rights in the Photographs are owned exclusively by Coder LLC, with the exception of authorized license agreements referenced above.

213.     Mr. Coder is a prolific and well-known professional photographer known for producing high quality images, and as such Coder LLC is known for being a licensor of the same.

214.     Coder LLC is a licensor of photographs, including the Photographs at issue here, to be used by third parties, including media publications, on the Internet and in print, like the Defendants in this case.

215.     Defendant Sotheby's knew that at the time of its transaction with him Mr. Coder was the author of the Photographs and that Mr. Coder was the owner of the registered copyrights in the Photographs, and therefore that Mr. Coder was the exclusive licensor of the Photographs at that time.

216.     Defendant Sotheby's offered copies of the Photographs for licensing, thereby competing directly with Coder LLC with respect to the licensing of the Photographs.

217.     By falsely holding itself out as the licensor of the Photographs, Sotheby's has falsely represented to the public the source of the Photographs by attributing to itself the right to administer the licensing of the Photographs.

218. In doing so, Sotheby's has therefore misrepresented to the Defendants to whom it distributed the Photographs, and presumably to other third parties according to facts not yet known to Coder LLC and to be revealed in discovery, the nature, quality, and characteristics of the Photographs in connection with the commercial advertising and promotion of the Photographs for license to the public. That is particularly so because while Mr. Coder has spent his career building goodwill in the photographic licensing marketplace as the licensor of high quality and sought after visual artworks, Sotheby's has not; Sotheby's is a real estate company. As such, by virtue of misrepresenting the source of the Photographs, Sotheby's has not only created confusion in the marketplace as to the authorized licensor of the Photographs, Sotheby's has also misrepresented the nature, quality, and characteristics of the Photographs by attributing the source of the Photographs to a source (*i.e.*, Sotheby's) that is not particularly known in the marketplace as a source of high quality visual artworks.

219. The actions complained of herein are likely to cause confusion or mistake, or to deceive the public as to the affiliation, connection or association of Sotheby's with Coder LLC and the Photographs.

220. The actions complained of herein are further likely to cause confusion or mistake, or to deceive the public as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

221. As a direct and proximate result of the immoral, unethical, and unscrupulous conduct of Sotheby's, Sotheby's has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

222.    As a direct and proximate result of the immoral, unethical, and unscrupulous conduct of Sotheby's, Coder LLC has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

223.    Coder LLC is entitled to recover from Sotheby's its actual damages, the profits gained by Sotheby's, punitive damages, and Coder LLC's costs of this action, including attorneys' fees, pursuant to the CUTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Coder LLC prays for judgment in his favor and against Defendants as follows:

(a)    For a permanent injunction enjoining Defendants, their respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; their divisions, such divisions' respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; and those in privity with or in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise from any further acts of direct and/or indirect copyright infringement, any acts in violation of the rights accorded to Plaintiff Coder LLC under 17 U.S.C. § 1202, false designation of origin, false advertising, unfair competition, and unfair trade practices;

(b)    For an award of monetary damages in an amount to be proven at trial;

(c)    For costs of this lawsuit;

(d)    For his attorneys' fees;

(e)    For interest as allowed by law; and

(f)    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Coder LLC hereby

demands a trial by jury for all issues so triable in this case.


Dated: June 23, 2021                           Respectfully submitted,

                                               **LEICHTMAN LAW PLLC**

                                  By:     _/s/ David Leichtman_

                                          David Leichtman (CT31070)
                                          228 East 45th Street, Suite 605
                                          Tel: (212) 419-5210
                                          dleichtman@leichtmanlaw.com

                                          *Attorneys for Plaintiff Lane Coder*
                                          *Photography, LLC*